# EXHIBIT A

**Hypothetical Liquidation Analysis and Notes**

**GST, Inc.**
**Hypothetical Liquidation Analysis**
*(USD$ in 000's)*

## Overview

Section 1129(a)(7) of title 11 of the United States Code (the "Bankruptcy Code") requires that each Holder of an Impaired Allowed Claim or Interest either (i) accept the Plan or (ii) receive or retain under the Plan, property of a value, as of the Effective Date, that is not less than the value such Holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan. This is referred to as the "Best Interests Test."

To demonstrate that the Plan satisfies the Best Interests Test under section 1129(a)(7), the Debtor[1] has prepared a hypothetical liquidation analysis (the "Liquidation Analysis"). The Liquidation Analysis estimates the realizable liquidation value of the Debtor's assets and estimates the distribution to creditors resulting from the liquidation. The Liquidation Analysis indicates that Holders of Allowed Claims in each Impaired Class will receive at least as much under the Plan as they would if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. Therefore, the Debtor believes that the Plan satisfies the Best Interest Test set forth in section 1129(a)(7) of the Bankruptcy Code.

The Liquidation Analysis is predicated on the Chapter 11 case subsequently being converted to a Chapter 7 case on the Effective Date (the "Liquidation Date", see note [1] below), and a Chapter 7 trustee (the "Trustee") is appointed to convert all assets into cash.

The Liquidation Analysis is based on the Company's estimated book values as of the Liquidation Date unless otherwise noted.

Under Chapter 7, the Debtor's assets would be subject to liquidation, and values would be measured based on the premise that such assets are liquidated in an orderly fashion.

For purposes of this Liquidation Analysis, it is assumed that the Debtor's operations would cease immediately upon conversion to Chapter 7. The Trustee will retain minimal administrative and information technology services necessary to wind down the Debtor and dispose of its assets through piecemeal sales and efforts to pursue any causes of action. The Trustee would commence an accelerated liquidation process, during which time all of the property of the Debtor's Estate would be sold and any collectable preference and avoidance actions would commence. The amount of proceeds available from the liquidation of the property of the Estate would be the net proceeds (after accounting for costs associated with conducting the liquidation) from the sale of property of the Estate ("Liquidation Proceeds"). This Liquidation Analysis assumes that the Liquidation Proceeds would be distributed in accordance with section 726 of the Bankruptcy Code. The Liquidation Proceeds would be applied in the order of priority set forth in section 726 of the Bankruptcy Code:

    (i) first, to the Holders of Allowed Senior Secured Super-priority Claims;
    (ii) second, to the Holders of Allowed Secured Claims;
    (iii) third, to the holders of any Super-priority Administrative Claims;
    (iv) fourth, to holders of Administrative Expense Claims;
    (v) fifth, to the holders of any other Priority Claims;
    (vi) sixth, to the holders of General Unsecured Claims; and
    (vii) seventh, to the Debtor.

The Liquidation Analysis does not include estimates for: (i) the tax consequences that may be triggered upon the liquidation and sale of property of the Debtor's Estate or (ii) damages as a result of breach or rejection of obligations incurred and leases and executory contracts assumed or entered into. More specific assumptions regarding the liquidation analysis are detailed in the notes below.

Estimating recoveries in any hypothetical Chapter 7 liquidation is an uncertain process involving the subjective use of estimates and assumptions which, although considered reasonable by management, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtor or the Trustee. In the event of a Chapter 7 liquidation, the actual results may vary materially from the estimates and projections set forth herein. Similarly, the actual amounts of Allowed Claims in a Chapter 7 liquidation could materially and significantly differ from the amounts of Claims estimated in this Liquidation Analysis.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them elsewhere in this Liquidation Analysis or in the Combined Chapter 11 Plan of Reorganization and Disclosure Statement of GST, Inc. (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"), as applicable.

**GST, Inc.**
**Hypothetical Liquidation Analysis**
*(USD$ in 000's)*

**Summary of Recovery**

The table below summarizes the projected proceeds that may be available for distribution to creditors in a hypothetical liquidation of the Debtor's estate under Chapter 7 of the Bankruptcy Code.  For purposes of this analysis, a potential range of outcomes has been projected in Low and High Scenarios.  The likely outcome is in the middle of this range.

The recoveries below do not reflect the potential negative impact on the distributable value available to the Debtor's creditors on account of any unknown or contingent liabilities, including, but not limited to, environmental obligations and unasserted claims.

| (USD$ in 000's) | Note | [1] Net Book Value as of 4/17/26 | Liquidation Recovery % | | Liquidation Value | |
|---|---|---|---|---|---|---|
| | | | Low | High | Low | High |
| **Gross Liquidation Proceeds Available for Distribution** | | | | | | |
| Cash & Cash Equivalents | 2 | 85 | 100.0% | 100.0% | 85 | 85 |
| Accounts Receivable | 3 | 0 | 0.0% | 0.0% | 0 | 0 |
| Prepaid Expenses | 4 | 21 | 0.0% | 0.0% | 0 | 0 |
| Inventory | 5 | 27 | 10.0% | 20.0% | 3 | 5 |
| Ch 11 Professional Fee Retainers | 6 | 0 | 0.0% | 0.0% | 0 | 0 |
| Intangible Assets | 7 | 0 | N/A | N/A | TBD | TBD |
| Potential Causes of Action | 8 | 5,322 | 19.4% | 45.9% | 1,031 | 2,442 |
| | | | | | 1,119 | 2,532 |
| | | | | | | |
| **Chapter 7 Administrative Costs** | | | | | | |
| Chapter 7 Trustee Fees | 9 | | | | 34 | 76 |
| Chapter 7 Professional Fees | 10 | | | | 300 | 300 |
| Wind-down / Liquidation Costs | 11 | | | | 100 | 100 |
| US Trustee Fees | 12 | | | | 9 | 20 |
| | | | | | 443 | 496 |
| | | | | | | |
| **Net Proceeds Available for Distribution** | | | | | 676 | 2,036 |
| | | | | | | |
| **Senior Secured Super-priority Claims** | | | | | | |
| DIP Loan | 13 | 4,700 | 14.4% | 43.3% | 676 | 2,036 |
| | | | | | 676 | 2,036 |
| | | | | | | |
| **Net Proceeds Available for Distribution after Senior Secured Super-priority Claims** | | | | | 0 | 0 |
| | | | | | | |
| **Pre-petition Secured Claims** | | | | | | |
| Senior Secured Promissory Notes | 14 | 2,670 | 0.0% | 0.0% | 0 | 0 |
| | | | | | 0 | 0 |
| | | | | | | |
| **Net Proceeds Available for Distribution after Secured Claims** | | | | | 0 | 0 |
| | | | | | | |
| **Chapter 11 Administrative Claims** | | | | | | |
| Ch 11 Professional Fees | 15 | 0 | N/A | N/A | 0 | 0 |
| US Trustee Fees | 16 | 0 | N/A | N/A | 0 | 0 |
| Post-petition Accounts Payable & Accrued Expenses | 17 | 0 | N/A | N/A | 0 | 0 |
| | | | | | 0 | 0 |
| | | | | | | |
| **Net Proceeds Available for Distribution to Unsecured Creditors** | | | | | 0 | 0 |
| | | | | | | |
| **Pre-petition Priority Unsecured Claims** | | | | | | |
| Priority Unsecured Tax and Wage Claims | 18 | 0 | N/A | N/A | 0 | 0 |
| | | | | | 0 | 0 |
| | | | | | | |
| **Net Proceeds Available for Distribution to General Unsecured Claims** | | | | | **0** | **0** |

**GST, Inc.**
**Hypothetical Liquidation Analysis**
*(USD$ in 000's)*

**Notes & Significant Assumptions to Liquidation Analysis**

[1] **As of Date:**  The Liquidation Date assumed in this analysis is the same as the latest date shown in the Debtor's DIP Loan Budget, which is the anticipated Effective Date for the Debtor's Plan of Reorganization.

*GROSS LIQUIDATION PROCEEDS AVAILABLE FOR DISTRIBUTION*

[2] **Cash & Cash Equivalents:**  The amounts shown are the projected cash balances available to the Debtor as of the Liquidation Date, based on proceeds from DIP Loan Draws and projected cash flows shown in the Debtor's DIP Loan Budget.

[3] **Accounts Receivable:**  The Debtor does not anticipate having any Accounts Receivable as of the Liquidation Date.

[4] **Prepaid Expenses:**  As shown in the Debtor's Schedules, there is approximately $22k of prepaid travel, venue costs, and other amounts.  Given their immaterial amounts, these would likely be forfeited with no anticipated recovery available to creditors of the estate in a liquidation scenario.

[5] **Inventory:**  As shown in the Debtor's Schedules, there is approximately $26k of inventory consisting of various track equipment.  Given their immaterial amounts and the Debtor's history of gifting such inventory to local communities after hosting meets, it is expected these would yield minimal recovery to creditors of the estate in a liquidation scenario, which is estimated at a range of 10 - 20% of cost.

[6] **Ch 11 Professional Fee Retainers:** Consists of pre-petition retainers held by various professionals employed in the Debtor's Ch 11 bankruptcy case.  It is expected that these would be substantially used up by the time of the Liquidation Date, and that any remaining amounts at that time would be applied to the outstanding balance due to such professionals, with no anticipated recovery to creditors of the estate.

[7] **Intangible Assets:**  The Debtor believes that it has developed meaningful goodwill and other intangible assets during the course of its operations to date, through contractual and other relationships that have been developed and maintained by the Debtor's founders.  In a liquidation scenario, it is unknown how or if this could be monetized because of the uniqueness of the Debtor's business model and because the realizable value of such assets (if any) is directly tied to relationships held by the Debtor's founders, neither of which would continue to exist in a liquidation scenario.  The potential recovery on such intangible assets is therefore not estimated for purposes of this analysis and it remains subject to further analysis.

[8] **Potential Causes of Action:** In a Chapter 7 liquidation, there would be no New Value Contribution paid to the Estate under the Plan.  Instead, the Trustee would consider pursuing various potential avoidance actions under Chapter 5 of the Bankruptcy Code, including recovering any preference payments made to creditors during the 90-day period prior to the Petition Date and any other potential causes of action the Estate may hold. The Debtor has completed a preliminary analysis of potential preference recoveries as shown below, which presumes the Trustee engages counsel to pursue any litigation claims on a contingency fee basis, and so the liquidation value shown here are net of such fees.  The Debtor is unaware of potential cause of actions other than the potential avoidance actions (as analyzed below), but that analysis would be undertaken by the Trustee.

| Vendor Category | | Total Payments | Liquidation Recovery % | | Liquidation Value | |
|---|---|---|---|---|---|---|
| | | | Low | High | Low | High |
| Athlete Payments (domestic payees receiving over $31,250) | **[a]** | 3,094 | 33.3% | 66.7% | 1,031 | 2,063 |
| Athlete Payments (foreign payees, need to file in jurisdictions outside the United States) | **[b]** | 1,535 | 0.0% | 22.2% | 0 | 341 |
| Athlete Payments (under $31,250, need to file in local jurisdictions) | **[c]** | 173 | 0.0% | 22.2% | 0 | 38 |
| G&A Expenses (eg, credit cards, insurance, ordinary course professionals) | **[d]** | 520 | 0.0% | 0.0% | 0 | 0 |
| | | 5,322 | 19.4% | 45.9% | 1,031 | 2,442 |

[a] High scenario assumes recoveries pursued through 33.3% contingency-based fee arrangements, yielding at most a 66.7% recovery; low scenario assumed at 50% of high scenario

[b] High scenario assumes recoveries pursued through 33.3% contingency-based fee arrangements with only one-third of creditors responding due to being in foreign jurisdictions, yielding at most a 22% recovery; low scenario assumed no such creditors respond due to being in foreign jurisdictions, yielding no recovery

[c] High scenario assumes recoveries pursued through 33.3% contingency-based fee arrangements with only one-third of creditors responding due to being in local jurisdictions, yielding at most a 22% recovery; low scenario assumed no such creditors respond due to being in local jurisdictions, yielding no recovery

[d] Ordinary course vendors appear to have been paid per contracted terms and so likely have either ordinary course or new value defenses, yielding no anticipated recovery; amount remains subject to further analysis

**GST, Inc.**
**Hypothetical Liquidation Analysis**
*(USD$ in 000's)*

**Notes & Significant Assumptions to Liquidation Analysis**

*CHAPTER 7 ADMINISTRATIVE CLAIMS AND COSTS TO LIQUIDATE*

[9] **Chapter 7 Trustee Fees:** The Trustee's fees have been estimated to be 3% of funds disbursed or turned over to parties in interest in accordance with section 326 of the Bankruptcy Code.  Note that if any of these amounts were to remain unpaid, they are subject to a $25k carve out from the DIP Loan collateral (see note [13] below).

[10] **Chapter 7 Professional Fees:** The duration of a liquidation under Chapter 7 could be month or years if litigation ensues.  The estimate for Chapter 7 Professional Fees is therefore inherently difficult to estimate, but it would include the costs for accounting, tax, legal and other professionals for general administrative matters, including satisfying tax and reporting requirements, retention and fee applications, handling case notices and matters concerning reconciling Claims and any distributions. For purposes of this analysis, these costs have been estimated at $300k. The professional fees to pursue Chapter 5 causes of actions are assumed to be on a contingency fee basis and are already netted out of those estimated recoveries (see note [8] above), and are therefore not included with these estimated Chapter 7 Professional Fees.

[11] **Wind-down / Liquidation Costs:**  Certain wind-down and liquidation costs are expected to be incurred by the Trustee while liquidating non-litigation assets and administering the case.  To maximize recoveries on the Debtor's assets, minimize the amount of claims, and generally ensure an orderly liquidation, it is assumed that the Trustee will incur costs such as (i) document storage and retention expenses, (ii) other costs related to preserving the books and records, satisfying reporting requirements, issuing notices, making distributions, and (iii) other miscellaneous costs.  For purposes of this analysis, these costs have been estimated at $100k.

[12] **US Trustee Fees:** The US Trustee's fees have been estimated to be 0.8% of funds disbursed or turned over to parties in interest, as per the current ranges for calculating US Trustee fees.  Note that if any of these amounts were to remain unpaid, they are subject to a carve out from the DIP Loan collateral.

*SECURED, CH 11 ADMINISTRATIVE, PRIORITY UNSECURED, AND GENERAL UNSECURED CLAIMS*

[13] **DIP Loan:** Includes outstanding DIP Loan Draws through the Liquidation Date per the current DIP Loan Budget plus an equal amount of principal rolled-up from the pre-petition Senior Secured Promissory Notes (see note [14] below).  As per the Final DIP Order, this obligation has a first priority lien on all assets including Chapter 5 Causes of Action as collateral, and so it is assumed to recover all remaining proceeds after considering the projected Chapter 7 Administrative Costs, which represent the costs to liquidate that collateral.  There are consequently no funds expected to remain available for recovery by pre-petition secured or unsecured creditors in a liquidation scenario, and so those recoveries are accordingly shown at $0.

For purposes of this analysis, note that the projected DIP Loan balance is assumed to be drawn in full as shown in the current DIP Loan Budget and used to pay all anticipated administrative costs, including Ch 11 Professional and UST Fees.  To the extent the DIP Loan is not used to pay such claims, the DIP Loan balance would be lower but those amounts would remain outstanding, resulting in the same net recovery to unsecured creditors.

Note that while there are certain carve-outs allowed for under the Final DIP Order, in this analysis these amounts are assumed to be already paid in full from the DIP Loan Draws (see notes [15] and [16] below) or paid as part of the costs incurred to liquidate the underlying collateral (see note [9] above).

[14] **Senior Secured Promissory Notes:** Includes outstanding principal due on those senior secured promissory notes issued pre-petition as per the Debtor's Schedule D, less the amounts rolled-up into the DIP Loan which is assumed to happen on a 1-to-1 ratio of the DIP Loan Draws as per the Final DIP Order.

[15] **Chapter 11 Professional Fees:** Assumed to be paid in full from DIP Loan Draws or the application of pre-petition retainers held by such professionals, with no remaining exposure for the Estate.  Note that if any amounts were to remain unpaid, these are subject to a $125k carve-out from the DIP Loan collateral ($100k to Debtor's professionals and $25k to Committee professionals).

[16] **US Trustee Fees:** Assumed to be paid in full from DIP Loan Draws, with no remaining exposure for the Estate.  Note that if any of these amounts were to remain unpaid, they are subject to a carve out from the DIP Loan collateral.

[17] **Accounts Payable and Accrued Expenses:** Assumed to be paid in full from DIP Loan Draws, with no remaining exposure for the Estate.

[18] **Priority Unsecured Tax and Wage Claims:** As shown in the Debtor's Schedules, there are approximately $68k of tax and wage claims that are expected to be priority unsecured claims.  In a liquidation scenario, there is not expected to be any recovery available to these creditors, as shown by this analysis.